# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CARY, Minors.

UNPUBLISHED
February 15, 2018

No. 339423
Marquette Circuit Court
Family Division
LC No. 13-009738-NA

Before: MARKEY, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

Respondent appeals by right from an order terminating her parental rights with respect to her three children, AC, LC, and EMC, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (g) (failure to provide proper care and custody).[1] We affirm.

## I. FACTS

This is the fourth instance in which Child Protective Services (CPS) has been involved with respondent's children. In this instance, respondent came to CPS's attention because she was filling AC's prescriptions, but was not providing the medication to AC. Respondent was also homeless and involved in a relationship marked by multiple domestic violence incidents. The children were removed from respondent's care.

According to Amanda Wetelainen, a foster care worker, respondent faced four barriers to reunification: a lack of housing, domestic violence, mental health issues, and inadequate parenting skills. Following adjudication, petitioner identified substance abuse as another barrier. Respondent was homeless throughout the pendency of this case. Wetelainen stated that she offered various housing services, but respondent was unable to secure housing. Regarding domestic violence, respondent acknowledged that she had been in a relationship for five years with a man who had assaulted her. Wetelainen testified that she recommended a mental health assessment for respondent, but that respondent had failed to complete an intake appointment. As for parenting skills, Wetelainen reported that during supervised parenting time, the children were "wild" and "out of control." Workers testified that respondent had been inconsistent with her

---

[1] It is unclear whether the court also relied on MCL 712A.19b(3)(c)(*ii*) (subsequently identified conditions continued to exist).

-1-

attendance for the Infant Mental Health program for EC, and that her parenting skills had not improved. The foster mother for AC and EC explained that their behaviors had improved since they came into care, and a worker from Teaching Family Homes, where LC was placed, reported improvement by LC. Finally, with respect to substance abuse, respondent had passed only seven of 18 drug screens, and had tested positive for methamphetamine on one occasion.

Following the termination hearing, the trial court found that the statutory grounds had been proven by clear and convincing evidence, citing respondent's inconsistency and inability to "put into practice the skills she has been taught." The trial court also determined that termination was in the children's best interests because of the progress made by the children outside of respondent's care. Accordingly, the trial court ordered respondent's parental rights terminated with respect to all three children.

## II. DISCUSSION

Respondent argues that the trial court committed error when it determined that statutory grounds for termination were established by clear and convincing evidence and when it determined that termination of her parental rights would be in the children's best interests. We disagree.

This Court reviews a circuit court's decision to terminate parental rights, as well as its determination of the child's best interests, under the clear error standard. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). Under that standard, the lower court's decision must be "more than just maybe or probably wrong." *In re Trejo Minors*, 462 Mich 341, 356; 612 NW2d 407 (2000) (citation omitted).

"The petitioner bears the burden of establishing the existence of at least one of [the statutory grounds for termination of parental rights] by clear and convincing evidence." *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003). Parental rights may be terminated under MCL 712A.19b(3)(c)(*i*) when "182 or more days have elapsed since the issuance of an initial dispositional order," and the "conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

Here, Wetelainen testified that the conditions that led to adjudications were inadequate housing, domestic violence, mental health issues, and issues with parenting skills. Among other things, the parent-agency agreement required respondent to complete paperwork with various housing agencies in an effort to secure housing, that she participate in mental health services to address domestic violence and her mental health issues, and that she attend parenting time regularly. Wetelainen stated that little progress had been made and that there was no reasonable likelihood that the conditions that led to adjudication would be rectified in a reasonable amount of time. She explained that respondent did not have appropriate housing and respondent indicated that she was homeless. Wetelainen indicated that respondent had been offered housing assistance and that one location may have been an option except that respondent was excluded

because she possessed a medical marijuana card. Wetelainen indicated that she was not aware of any other service she could provide that could assist respondent in finding housing. Respondent did profess that she would give up her medical marijuana card in order to get housing. However, even if she did and she were able to get housing, she did not overcome the other barriers to reunification.

Wetelainen testified that respondent's domestic violence issues had not been resolved. She had been observed with the person who had assaulted her. Specifically, they were observed "screaming" at each other, swearing, and calling each other names before respondent's parenting time. Respondent noted that he was not involved in the children's lives. But respondent was still engaged with her abuser, and there was no guarantee he would remain inactive in the children's lives if they were returned to respondent's care.

Regarding mental health issues, respondent began an intake appointment for mental health services with one facility, but she became frustrated when she learned that she would not be receiving prescription medication, only counseling, and left the appointment. Further, respondent cancelled or missed multiple intake appointments at another facility. She did not attend mental health counseling.

Respondent also failed to complete parenting classes. Although she could not have completed one set of parenting classes that were cancelled, she failed to complete a parenting handbook. Moreover, respondent had not consistently attended parenting time, only attending about 70 percent of visits. She had attended only 25 of the 52 scheduled meetings for EC's Infant Mental Health program. The Infant Mental Health counselor explained that no progress had been made on respondent's goals, and she could not identify a better attachment between respondent and EC.

The testimony introduced at the hearing established that respondent had made no progress or no significant progress in attaining suitable housing, addressing domestic violence or mental health issues, or in improving her parenting skills. Therefore, we cannot conclude that the trial court was "more than just maybe or probably wrong," *In re Trejo Minors*, 462 Mich at 356 (citation omitted), in concluding that the "conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*).

Parental rights may be terminated under MCL 712A.19b(3)(g) when "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." "[A] parent's failure to comply with the parent-agency agreement is evidence of a parent's failure to provide proper care and custody for the child." *In re JK*, 468 Mich at 214. As discussed above, respondent was homeless and had been unable to attain housing. She continued a romantic relationship with her abuser, who had been convicted of assaulting her. She had refused to complete a mental health intake appointment. She had made little to no progress with her parenting skills. Considering this evidence, we cannot conclude that the trial court was "more than just maybe or probably wrong," *In re Trejo Minors*, 462 Mich at 356 (citation omitted), in concluding that petitioner had introduced clear and convincing evidence, *In re JK*, 468 Mich at 210, to establish that respondent failed to

provide proper care or custody and there was no reasonable expectation that she would be able to do so within a reasonable time considering the child's age." MCL 712A.19b(3)(g).

Respondent also argues that petitioner did not make reasonable efforts to rectify the conditions that led to adjudication. Under the Probate Code, MCL 710.21 *et seq.*, petitioner "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). Those reasonable efforts must include petitioner's creation of a service plan that states the steps that it, along with the parent, will take to resolve "the issues that led to court involvement and to achieve reunification." *Id.* at 85-86. Before a child who has come within the jurisdiction of the family court will be returned to a parent, that parent must show that he or she can meet their child's basic needs. *In re Terry*, 240 Mich App 14, 28; 610 NW2d 563 (2000). "If a parent cannot or will not meet her irreducible minimum parental responsibilities, the needs of the child must prevail over the needs of the parent." *Id*. Although petitioner has "a responsibility to expend reasonable efforts to provide services to secure reunification," a respondent must participate in, and benefit from, services that are offered. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

The trial court found that petitioner had made reasonable efforts to preserve and unify the family. Petitioner referred respondent for drug and alcohol counseling, drug screens, Infant Mental Health for EC, Wraparound,[2] and parenting classes. Additionally, petitioner offered a family support educator, housing assistance, supervised visitation and supportive visitation services, bus tickets, and therapy for AC. Thus, it appears that petitioner offered ample services to respondent. The services offered addressed all the identified barriers to reunification. Accordingly, we cannot conclude that the trial court was "more than just maybe or probably wrong," *In re Trejo Minors*, 462 Mich at 356 (citation omitted), in concluding that petitioner had introduced clear and convincing evidence, *In re JK*, 468 Mich at 210, that petitioner made reasonable efforts to reunify the family prior to seeking termination of parental rights. *In re Hicks*, 500 Mich at 85-86.

Respondent also argues that the trial court committed clear error when it determined that termination was in the children's best interests. We disagree.

"Once a statutory ground for termination is established by clear and convincing evidence, the trial court must terminate parental rights unless it finds from the whole record that termination clearly is not in the child's best interests." *In re BZ*, 264 Mich App at 301; MCL 712A.19b(5). The petitioner must prove by a preponderance of the evidence that termination is in the best interests of the child. *In re Laster*, 303 Mich App 485, 496; 845 NW2d 540 (2013).

---

[2] "Wraparound refers to an individually designed set of services and supports provided to children with serious emotional disturbance or serious mental illness and their families that includes treatment services, personal support services or any other supports necessary to maintain the child in the family home." Michigan Department of Health & Human Services, *Wraparound Services*, <http://www.michigan.gov/mdhhs/0,5885,7-339-71550_2941_4868_7145-14676--,00.html> (accessed November 22, 2017).

Factors to consider include the child's bond to the parent; the parenting ability of the respondent; the child's need for permanency, stability, and finality; and a comparison between the parent's home and the child's foster home. *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). The trial court may also consider "the length of time the child was in care, the likelihood that 'the child could be returned to her parents' home within the foreseeable future, if at all,' and compliance with the case service plan." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015), quoting *In re Frey*, 297 Mich App at 248-249. In addition, the court may consider "the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

The trial court concluded that termination was in the best interest of all three children. The Infant Mental Health counselor stated that EC attempted to bond with respondent, but that he also pushed her away at times, and she indicated that the two were not close. Wetelainen stated that LC usually did not participate in parenting time. The Teaching Family Homes worker testified that LC did not display excitement either before or after parenting time. This indicates that there was little bond between respondent and EC and LC. According to her foster mother, AC would be excited prior to seeing respondent for parenting time and would become upset when respondent cancelled parenting time. This testimony indicates that there is at least some bond between respondent and AC.

As discussed above, respondent's parenting skills were poor, and it appears that they were unlikely to improve. Additionally, the children had already been removed from respondent on three prior occasions. Therefore, the need for stability weighed in favor of termination. *In re Olive/Metts Minors*, 297 Mich App at 41-42. Further, as discussed above, respondent failed to comply with the parent-agency treatment plan, which also weighed in favor or termination. *In re Payne/Pumphrey/Fortson*, 311 Mich App at 64.

Notably, the children demonstrated behavioral improvement while outside of respondent's care. AC and EC were in foster care. Wetelainen stated that when AC first entered foster care "she was out of control," and would "threaten to hurt her siblings." Additionally, AC did not consistently take her medications. Wetelainen testified that in foster care, AC "has made a lot of progress." According to her foster mother, AC is "a typical teenager," but she "listens pretty well to me and my husband." AC's foster mother testified that AC had "definitely" improved during the seven months they had been together. Shortly after AC moved in with her, stated her foster mother, AC ran away after school because her foster parents would not let her spend the night at a friend's house, "[b]ut, after that, . . . she knew the consequences of being grounded, it's just a normal typical teenager." LC was placed at Teaching Family Homes and showed improvement in communicating when she was upset, accepting a decision that she could not do what she would like, and behaving appropriately rather than acting out to get attention. Wetelainen stated that five-year-old EC swears "a lot less frequent[ly]" now that he is in foster care and has established bonds with his foster parents. Given the evidence that the children were improving in their placements, "the children's well-being while in care," *In re White*, 303 Mich App at 714, weighed in favor of termination.

Considering the evidence presented, we cannot conclude that the trial court was "more than just maybe or probably wrong," *In re Trejo Minors*, 462 Mich at 356 (citation omitted), in

concluding that a preponderance of the evidence established that termination of parental rights was in the children's best interests. *In re Laster*, 303 Mich App at 496.

We affirm.

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Thomas C. Cameron